**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| CARLOS MONTEZ ELDER, | § | |
| No.  1063999, | § | |
|       Petitioner, | § | |
| | § | |
| v. | § | NO. 3:05-CV-0899-D |
| | § | |
| DOUG DRETKE, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
|       Respondent. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the provisions of 28 U.S.C. § 636(b) and an order of the District Court in implementation thereof, the subject cause has previously been referred to the United States Magistrate Judge.  The findings, conclusions, and recommendations of the Magistrate Judge, as evidenced by his signature thereto, are as follows:

FINDINGS AND CONCLUSIONS:

Type of Case:  This is a petition for habeas corpus relief filed by a state inmate pursuant to 28 U.S.C. § 2254.

Parties:  Petitioner Carlos Montez Elder ("Elder" or "Petitioner") is confined at the Robertson Unit of the Texas Department of Criminal Justice, Correctional Institutions Division ("TDCJ-CID") at Abilene, Texas.  Respondent is the Director of the TDCJ-CID.

Statement of the Case**:** Petitioner pled not guilty in cause number F-01-52854-WL to the offense of possession of cocaine with intent to deliver enhanced by two prior felony convictions. Petitioner elected to have a jury determine his guilt or innocence and to have the judge assess

1

punishment.  The jury found him guilty and the judge assessed punishment at 50 years

imprisonment.  Elder's conviction was affirmed on appeal.  *Elder v. State*, No.  11-01-00384-CR

(Tex. App. - Eastland Dec.  12, 2002).  Elder's petition for discretionary review ("PDR") was

refused on May 14, 2003.  Elder did not file a petition for writ of certiorari to the United States

Supreme Court.

Elder filed a habeas application pursuant to Texas Code of Criminal Procedure, article

11.07 on April 12, 2004.  *Ex parte Elder*, Appl.  No.  60,480-01 at 2.  His application was denied

by the Texas Court of Criminal Appeals without written order on the findings of the trial court

without a hearing on February 9, 2005.  *Ex parte Elder*, Appl.  No. 60,480-01 at cover.

Petitioner filed the instant petition on May 1, 2005.[1]  On August 10, 2005, Respondent

filed his answer contending that Elder is not entitled to relief on the merits.  Elder's traverse was

filed on September 20, 2005.

Findings and Conclusions:  Review of Elder's claims is governed by the provisions of the

Antiterrorism and Effective Death Penalty Act ("AEDPA") which, in pertinent part, provides

that a federal court cannot grant relief under § 2254 of the act unless the adjudication of a state

prisoner's claim in the state court system, "(1) resulted in a decision that was contrary to, or

involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States; or (2) resulted in a decision that was based on an

unreasonable determination of the facts in light of the evidence presented in the state court

---

[1]  Under the "mailbox rule," a prisoner's federal habeas corpus petition is deemed filed
when he delivers it to prison officials for mailing to the district court.  *Spotville v.  Cain*, 149
F.3d 374, 378 (5th Cir.  1998).  Elder signed his federal habeas petition on May 1, 2005.  It was
filed stamped on May 3, 2005.  For the purposes of the recommendation, it is assumed that Elder
placed his § 2254 petition in the prison mail system on the date he signed his petition.

proceeding." 28 U.S.C § 2254(d)(1)-(2) (1996).  Findings of fact made by a state court are presumed to be correct absent clear and convincing evidence rebutting the presumption. § 2254(e)(1).  Where a petitioner challenges a state court's application of federal law under § 2254(d)(1), the petitioner must also show that the state court's decision was not only erroneous, but objectively unreasonable.  *See Yarborough v.  Gentry*, 540 U.S. 1, 5, 124 S.  Ct. 1, 4 (2003) (citing *Williams v.  Taylor*, 529 U.S. 362, 409, 120 S.  Ct.  1495, 1521 (2000)).

In six separate instances, Elder claims that he was denied the effective assistance of counsel by his trial attorney.  Petitioner asserts that his trial counsel was ineffective because he: (1) opened the door to Elder's prior convictions during the guilt/innocence portion of the trial, (2) failed to move to dismiss the indictment based on insufficiency of the evidence,  (3) failed to raise the issue of insufficiency of the evidence at the close of the trial, (4) failed to object to the prosecutor's questions regarding Petitioner's tattoos, (5) failed to object to the characterization that the money found on Petitioner's person was the fruit of drug sales, and (6) made disparaging and prejudicial remarks about Elder during his closing statement.  The state trial court addressed these same contentions when reviewing Elder's 11.07 application and determined that Elder's trial counsel "exercised all of the skill and expertise which one could reasonably expect of an attorney."  *See Ex parte Elder*, Appl.  No. 60,480-01 at 149 (Trial Ct.'s Findings of Fact and Conclusions of Law).  The Texas Court of Criminal Appeals accepted the findings of fact and conclusions of law of the trial court.  *Ex parte Elder*, Appl.  No. 60,480-01 at cover.

An attorney's conduct is governed by the standards set out in *Strickland v.  Washington*, 466 U.S. 668, 104 S.  Ct.  2052 (1984).  There is a strong presumption that an attorney's conduct

falls within the broad range of reasonable professional assistance required under the Sixth Amendment. *Id.* at 690, 104 S. Ct. at 2066. To overcome this presumption a habeas petitioner must establish that: (1) the attorney's conduct was constitutionally deficient (causation) and (2) but for such unprofessional errors, the result probably would have been different (prejudice). *Id.* at 687-88, 694, 104 S. Ct. at 2064, 2068. Failure to prove either prong of the two-part test forecloses relief. *Id.* at 697, 104 S. Ct. at 2069.

In his first ground, Elder attacks his trial counsel's strategy of preemptively introducing evidence of Elder's prior convictions. Under Texas Rule of Evidence 609, a witness' credibility may be impeached by evidence of criminal conviction where the crime is either a felony or a crime of moral turpitude and where the probative value of the conviction outweighs its prejudicial effect. *See Theus v. State*, 845 S.W.2d 874, 879 (Tex. Crim. App. 1992). All but one of Elder's prior convictions were either felonies or crimes of moral turpitude.[2]

Elder's trial counsel, William Nellis ("Nellis"), stated that he advised Petitioner that his prior convictions would be admissible if he chose to take the stand. *Ex Parte Elder*, Appl. No. 60,480-01 at 151 (Aff. of Tr. Att'y). Likewise, the court gave an admonishment to the same effect immediately before Petitioner took the stand. (Rep.'s R. v.4 at 6.) However, when Elder chose to testify, Nellis attempted to minimize the impeachment effect of Petitioner's extensive record by preemptively introducing evidence of his prior convictions and by eliciting testimony from Elder that he took responsibility for his crimes and had become a productive citizen since

---

[2]  Elder was convicted of theft on five separate occasions. (Rep.'s R. v.4 at 59-63.) Theft is a crime of moral turpitude. *See Milligan v. State*, 554 S.W.2d 192 (Tex. Crim. App. 1977). Elder had two felony drug convictions. (Rep.'s R. v.4 at 64-65.) He also was allegedly convicted of burglary of a coin-operated machine, a misdemeanor that has never specifically been held to be a crime of moral turpitude. (Rep.'s R. v.4 at 66-68.); *see also* Tex. Penal Code § 30.03 (Vernon 1989).

his last conviction in 1991.  (Rep.'s R.  v.4 at 9-10,13-18.)  Additionally, Nellis, during his

cross-examination of the arresting officers[3] and during his closing statement, attempted to raise

an inference that the arresting officers' decision to arrest Elder was influenced by their

knowledge that Elder had a prior conviction for possession of cocaine with intent to distribute.

(Rep.'s R. v.3 at 131-33, v.4 at 206-10, 224.)

    Trial counsel's preemptive presentation of Petitioner's prior convictions was a legitimate

strategic choice.  *See Coble v. Dretke*  417 F.3d 508, 517 (5th Cir. 2005) (finding that counsel's

decision to admit damaging non-hearsay documents before the State was able to introduce them

was an attempt to soften the documents' potential damaging effect and was "reasonable trial

strategy"); *see also Yohey v. Collins*, 985 F.2d 222, 228 (5th Cir. 1993) ("this Circuit is careful

not to second guess legitimate strategic choices"); *Garland v. Maggio*, 717 F.2d 199, 206 (5th

Cir. 1983) ("A conscious and informed decision on trial tactics and strategy cannot be the basis

for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the

entire trial with obvious unfairness").  Because Nellis' trial strategy was reasonable, Nellis'

performance was not constitutionally deficient.  *See Strickland*, 466 U.S. at 687-88.

    In his second and third grounds, Elder appears to argue that his trial counsel was

ineffective because he failed to challenge the sufficiency of the evidence by moving to dismiss

the indictment or by moving for a directed verdict.  Whether Elder's failure to move to dismiss

---

[3]  Nellis first brought out evidence of one of Petitioner's prior convictions during the
State's case-in-chief when he cross-examined Officer Morales.  (Rep.'s R.  v.3 at 131-32.)
While Elder had not yet testified, and therefore, his prior convictions were not admissible under
Texas Rule of Evidence 609, it appears that Nellis mentioned the prior conviction in order to lay
the groundwork for his argument that the arresting officers profiled Elder based on his prior
conviction.  This was a legitimate strategic decision.  *See Yohey*, 985 F.2d at 228; *see also
Garland*, 717 F.2d at 206.

the indictment and failure to move for a directed verdict was deficient depends upon whether

either motion would have been granted. *See Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990)

(counsel is not required to make futile motions or objections in order to be effective). When

reviewing whether there was insufficient evidence to convict, courts in the Fifth Circuit apply a

rationality standard to determine whether "no rational trier of fact could have found proof of

guilt beyond a reasonable doubt." *West v. Johnson*, 92 F.3d 1385, 1393 (5th Cir. 1996) (quoting

*Jackson v. Virginia*, 443 U.S. 307, 322-26, 99 S. Ct. 2781, 2791-92 (1979)), *cert. denied*, 520

U.S. 1242, 117 S. Ct. 1847 (1997).

The first portion of Elder's argument can be summarily dismissed because, in Texas,

absent special circumstances that were not present in Elder's case, a judge does not have

authority to dismiss an indictment without the consent of the prosecutor. *See State v. Johnson*,

821 S.W.2d 609, 613 (Tex. Crim. App. 1991). Therefore, Elder's trial counsel was not

ineffective for failing to make this futile motion. *See Koch*, 907 F.2d at 527.

The second half of Elder's argument–that trial counsel was deficient because he failed to

move for a directed verdict based on insufficient evidence to convict–is also without merit.

Based on Elder's indictment, the State had to prove that Elder "did intentionally and knowingly

possess with intent to deliver a controlled substance, to-wit: cocaine, in an amount by aggregate

weight, including any adulterants or dilutants, of 4 grams or more but less than 200 grams." *Ex

parte Elder*, Appl. No. 60,480-01 at 154. At Elder's trial, the evidence the state produced to

support his conviction included: (1) testimony from Dallas police officer George Morales

("Morales") that he saw Elder conversing with two other men on a sidewalk in a known drug

neighborhood while holding a brown paper sack (Rep.'s R. v.3 at 29), (2) testimony from

Morales that he saw Elder walk and throw the bag away after seeing Morales and his partner (Rep.'s R.  v.3 at 43-44, 50-51), (3) testimony from Morales that he retrieved the bag, opened it, and found what appeared to be a large crack "cookie" as well as  individually packaged rocks of cocaine (Rep.'s R.  v.3 at 57), (4) testimony from Morales that a pat-down search of Elder revealed $596.74, including 68 one dollar bills (Rep.'s R.  v.3 at 64-65),  (5) testimony from a state chemist that the items found in the bag were, in fact, cocaine (Rep.'s R.  v.3 at 191-93), and (6) expert testimony from Dallas police officer Anthony Gipson ("Gipson"), a narcotics detective with 13 years of narcotics experience, that, in his opinion, a person who possesses individually packaged packets of cocaine as well as a large amount of cash has the intent to distribute the cocaine (Rep.'s R.  v.3 at 169-171).

While Elder took the stand and told an entirely different story regarding the events surrounding his arrest, the jury was free to find Elder not credible and to ignore his statements. *See Cobb v.  Wainwright*, 666 F.2d 966, 971 (5th Cir.  1982) ("the jury has the sole responsibility to judge the weight and credibility of the evidence"); *cert.  denied*, 457 U.S. 1107, 102 S.  Ct.  2906 (1982).  Likewise, though each of the arresting officers' testimonies contained inconsistencies, it was within the province of the jury to determine their overall credibility.  *Id.* Thus, because a review of the record demonstrates that it is not so devoid of evidence such that "no rational trier of fact could have found proof of guilt beyond a reasonable doubt," *West*, 92 F.3d at 1393, trial counsel's failure to make a futile motion for a directed verdict cannot be considered constitutionally deficient, *see Koch*, 907 F.2d at 527.

In ground four, Elder alleges that his trial counsel was ineffective because he failed to object to the prosecutor's questions regarding Elder's tattoos.  When a criminal defendant

testifies in his own defense, he, at the very least, puts his character for veracity at issue.  *See*

*United States v. Akpan*, 407 F.3d 360, 373 (5th Cir. 2005).   Elder not only testified in his own

defense, but on direct examination he stated that after spending time in prison he had "changed

for the right reason."  (Rep.'s R.  v.4 at 18.)  On cross-examination, the prosecutor questioned

Elder regarding his numerous tattoos in a manner that appeared calculated to show that Elder

was not "reformed."  (Rep.'s R.  v.4 at 82-86.)  For instance, after Elder described several of his

tattoos, the prosecutor asked, "what does that represent to you?"  and later, "so what kind of

pattern are you showing by–with the tattoos that you've chosen to tattoo yourself with?"  (Rep.'s

R.  v.4 at 83, 85.)  Additionally,  in an apparent attempt to determine when Elder's "reformation"

occurred, the prosecutor asked Elder whether he had received all of his tattoos while he was

incarcerated.  (Rep.'s R.  v.4 at 86.)  Since the prosecutor's questioning of Elder regarding his

numerous tattoos was related to Elder's credibility, this line of questioning was proper.

Therefore, Nellis was not ineffective by failing to object to the prosecutor's line of questioning.

*See Koch*, 907 F.2d at 527.[4]

In his fifth ground, Elder argues that his trial counsel erred by failing to object to, or

rebut, the characterization that the money found on Petitioner's person was the fruit of illegal

drug sales.[5]  Petitioner's arguments are wholly without merit.  No basis existed for a meritorious

_____

[4]  Likewise, Nellis' decision to allow Elder to explain to the jury that he had reformed
since serving time in the penitentiary was not constitutionally deficient.  Because any cross-
examination of Elder would likely portray him as engaging in an ongoing pattern of criminal
behavior, it was logical, if not necessary, to have Elder explain why he no longer lived a life of
criminal enterprise.  *See Coble*, 417 F.3d at 517.

[5]  Elder also appears to argue that his attorney erred by failing to request a forfeiture
hearing before trial.  However, there is no evidence in the record that the state moved to forfeit
the money seized from Elder.  In fact, it appears that Elder was successful in obtaining the return
of his money after the trial.  *See* Petition, at 96.

objection to the expert testimony of Detective Gipson.  Any objection to Gipson's opinion

testimony regarding Elder's intent to distribute would have been futile because Gipson was an

experienced narcotics detective who was qualified to give expert testimony.  *See United States v.*

*Washington*, 44 F.3d 1271, 1283 (5th Cir.) ("The rule is well-established that an experienced

narcotics agent may testify about the significance of certain conduct or methods of operation

unique to the drug distribution business), *cert. denied*, 514 U.S. 1132, 115 S. Ct. 2011 (1995).

     In an effort to rebut and diffuse the opinion expressed by Gipson, Nellis brought out in

his direct examination of Elder sources of income to explain Elder's possession of the cash

recovered at his arrest and presented pay stubs reflecting Elder's weekly income.  (Rep.'s R. v.4

at 45-57, v.5 at Def.'s Exs. 3-5.)  Nellis also addressed the sources of the seized money during

his closing statement, and reminded the jury of Elder's explanation for why he was carrying a

large amount of cash.  (Rep.'s R.  v.4 at 231-232.)  Accordingly, Petitioner's fifth ground for

relief is without merit.

     In his final ground, Elder alleges that his attorney "abandoned" him and "affirmatively

aided the prosecution" by making derogatory and prejudicial remarks about Elder during his

closing statement.  Elder selectively quotes from his trial counsel's closing statement in a

manner that paints a highly deceptive picture of his counsel's performance.  A review of the

*entire* transcript of Nellis' closing argument demonstrates that Nellis discussed with the jury the

potential ways in which they could interpret the evidence and acknowledged that his client was

neither an ideal witness nor an ideal citizen.  (Rep.'s R.  v.3. at 219-20, 223, 233-36).

Acknowledging the weaknesses in one's case is a tactic that trial lawyers frequently employ as a

means of maintaining credibility in front of the jury, and Nellis cannot be faulted for using it.

*See Yarborough*, 540 U.S. at 9, 124 S. Ct.  at 6.   However, Nellis did not focus solely on his client's defects, but also thoroughly discussed several weaknesses in the State's case and urged the jury to hold the State to its burden of proving every element of the crime beyond a reasonable doubt.  (Rep.'s R.  v.4 at 236).   Thus, Nellis' closing argument, viewed in its entirety, was not deficient.

RECOMMENDATION:

For the foregoing reasons it is recommended that the district court dismiss the petition

because the claims made in grounds one through six are without merit.

A copy of this recommendation shall be transmitted to the Petitioner and to counsel for

Respondent.


Signed this 27th day of October, 2005

*Wm. F. Sanderson, Jr.*

Wm.  F.  Sanderson, Jr.
UNITED STATES MAGISTRATE JUDGE


NOTICE
In the event that you wish to object to this recommendation, you are hereby notified that
you must file your written objections within ten days after being served with a copy of this
recommendation.  Pursuant to *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir.
1996) (*en banc*), a party's failure to file written objections to these proposed findings of fact and
conclusions of law within such ten-day period may bar a *de novo* determination by the district
judge of any finding of fact or conclusion of law and shall bar such party, except upon grounds
of plain error, from attacking on appeal the unobjected to proposed findings of fact and
conclusions of law accepted by the district court.